FARHANG & MEDCOFF
4801 E. Broadway Boulevard, Suite 311
Tucson, Arizona 85711
T: 520.790.5433
F: 520.790.5736

John C. Smith (#023008)
jsmith@fmlaw.law
Cody Vandewerker (#033385)
cvandewerker@fmlaw.law
Eli T. Enger (#034242)
eenger@fmlaw.law

*Attorneys for Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: <br><br> FARWEST PUMP COMPANY, <br><br> Debtor. | Chapter 11 <br><br> Case No. 4:17-bk-11112-BMW <br><br> **COMMITTEE'S FIRST NON-ADVERSE MODIFICATION** |

Pursuant to 11 U.S.C. § 1127[1] and Rule 3019, the Official Committee of Unsecured Creditors (the "Committee") in the above-entitled bankruptcy proceeding, in response to the Debtor's *Objection to Committee's Liquidating Plan* [DE 258], hereby submits this Non-Adverse Modification with respect to the *Committee's Liquidating Plan* (the "Committee's Plan") filed on March 30, 2018 [DE 175].

**I.    Non-Adverse Modification.**

The Committee's Plan is modified as follows (additions are indicated in bold and underlined and deletions are indicated with a strike through):

**Classification and Treatment of Claims and Interests**

3.1.    **Unclassified Creditors —Administrative Claims**

Administrative Claims are those that have been incurred since the initial filing of this bankruptcy case or expenses entitled to administrative priority pursuant to §§ 507(a)(2) or 503(b) of the Bankruptcy Code. Administrative Claims shall be paid from the sale of assets,

---

[1] Unless otherwise stated herein, all statutory and rule references shall refer to Title 11 of the United States Code and the Federal Rules of Bankruptcy Procedure respectively.

collection of lease payments, cash held in the Debtor's DIP account on the effective date, and/or the recovery from litigation claims. All Administrative Claims must be filed by the Administrative Claims Bar Date. This Unclassified Class is not impaired and is not entitled to vote. Class 1 Claims are as follows:

### A. United States Trustee's Fees.

Any amounts owing will be paid on the Effective Date, or as due in the normal course of billing and payment. The Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6). The Liquidating Plan Trustee shall file with the Court, and serve on the United States Trustee, a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee and provided to the Liquidating Plan Trustee by the United States Trustee and shall pay such quarterly fees as become due for each quarter post-confirmation that the case remains open.

### B. Estate Professionals.

All approved and unpaid fees and costs will be paid in full on the later of the allowance of such claims or the Effective Date. The ultimate amount of estate professional fees will vary and depending on the litigation involved in this case; however, all such fees are estimated at $80,000, which does not include contingency fees related to the Litigation Claims.

. . .

3.3. Class 3- Secured Claims of UMB

### A. Description.

Class 3 consists of the claims of UMB ~~to the extent~~ allowed under § 506 arising from that certain loan dated January 6, 2015, and secured by the following Collateral: 2015 Kenworth Chassis VIN #1 NKDX4TX8FR975278 with FOREMOST Model DR12/26P-80/24H-900 DUAL ROTARY DRILL Serial #142711, 1978 Challenger M-280 Water Well Drilling Rig Serial # [ ], and also including all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located: (a) all accessions, attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later; (b) all products and produce of any of the property described in this Collateral section; (c) all accounts, general intangibles, instruments, rents, monies, payments,

and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section; (d) all proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process; and (e) all records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize. create, maintain, and process any such records or data on electronic media (the "UMB Collateral"). The Debtor's Amended Schedule D [DE 82] estimates that UMB holds a $585,989.61 secured claim. On February 21, 2018, UMB filed Proof of Claim #25 asserting a $616,170.25 claim secured by a Foremost Drilling Rig, Serial #142711; Kenworth Chassis, VIN 1NKDX4TX8FR975278; and Challenger Drilling Rig, Serial #C78752FG9780. To the extent the Liquidating Plan Trustee surrenders any UMB Collateral to UMB, UMB's secured claim shall be reduced by the outstanding loan amount securing an interest in the surrendered collateral (the "UMB Surrendered Amount").

**B. Treatment.**

Class 3 is impaired by this Plan. On the Effective Date (or the date on which such claim is allowed by a final non-appealable order), the holder of the allowed Class 3 Claim will credit the Debtor all adequate protection payments made by the Debtor pursuant to the amortization schedule under the original loan documents to arrive at an Effective Date Balance owed.

The Liquidating Plan Trustee shall either:

1. Determine whether any UMB Collateral is subject to a profitable lease **or whether UMB will agree to accept payments at an amount less than the total lease payments**. If so, the Liquidating Plan Trustee may assume any such lease through the Plan pursuant to § 1123(b)(2) and continue to collect lease payments for the duration of the lease. If any lease is assumed, the lease shall be identified as an assumed lease in Exhibit A attached hereto (also attached as Exhibit G to the Committee's Disclosure Statement). UMB shall retain its lien in the UMB Collateral to the same extent, priority, and validity as existed immediately

prior to the Petition Date. The Liquidating Plan Trustee shall remit funds to UMB in an amount necessary to service the UMB allowed secured claim, which shall equal the Effective Date Balance less the Surrendered Amount. Interest shall continue to accumulate at the lesser of five percent (5%) or the interest rate contemplated under the note. **In no event shall payments to UMB be greater than any lease income from the UMB Collateral less amounts necessary to pay for insurance on UMB's Collateral. Payments to UMB may continue until the lease's expiration date to the extent necessary to pay UMB's allow secured claim.** After servicing the UMB secured claim, the Liquidating Plan Trustee shall remit any remaining lease payment proceeds to the Liquidating Plan Trust. Upon the expiration of any UMB Collateral lease, the Liquidating Plan Trustee shall liquidate the UMB Collateral as contemplated in paragraph 6.3(B)(2) below.

    2.    To the extent the UMB Collateral is not subject to a profitable lease, as soon as practicable, the Liquidating Plan Trustee shall, in his sole discretion: (1) sell the UMB Collateral; (2) employ a professional to auction the UMB Collateral; or (3) surrender the UMB Collateral to UMB. UMB shall have the right to credit bid to the extent permitted by law. If a sale or auction of UMB Collateral generates net proceeds, such proceeds shall be remitted to the Liquidating Plan Trust. If the UMB Collateral is liquidated, any valid and perfected liens shall attach to proceeds in the same order and priority as existed immediately prior to the Petition Date ~~unless such lien(s) are stripped by the Plan~~. To the extent funds are available, the Liquidating Plan Trustee shall remit payment to all valid lien holders within fifteen (15) business days of receipt of the proceeds; or

    3.    If Channa and Clark Vaught ("the Vaughts") exercise the purchase option described in Class 9, the Liquidating Plan Trustee shall remit the outstanding balance owed to UMB within fifteen (15) business days of receipt of the Purchase Price. ~~Any outstanding amounts owed by the Debtor to UMB will be treated as a class 8 General Unsecured Claim.~~

    3.9.    <u>Class 9- Equity Security Holders.</u>

    **A.**    **Description.**

This class consists of the claims of the Debtor's equity holders: Channa and Clark Vaught.

### B. Treatment.

The Vaughts may purchase the Liquidating Plan Trustee's interest in all property and liabilities transferred to the Liquidating Trust (the "Purchase Option"). The Purchase Price shall be paid to the Liquidating Plan Trustee within ninety (90) days of the Effective Date or the Purchase Option is deemed void and the Liquidating Plan Trustee may execute the terms of this Plan. If the Vaughts do not exercise the Purchase Option or the Purchase Option is deemed void, the Vaughts' distribution under the Plan will be limited to **the value of their equity interest, which shall total the** excess proceeds after paying all Estate Creditors in full. To the extent such excess proceeds exist, such funds shall be paid to the Vaughts at the end of the first full quarter following a complete and total liquidation of the Liquidating Plan Trust.

## II. DISCUSSION

### A. The Proposed Modifications are Non-Adverse.

Pursuant to 11 U.S.C. § 1127(a), a "proponent of a plan may modify such plan at any time before confirmation but may not modify such plan so that such plan as modified fails to meet the requirements of §§ 1122 and 1123 of this title." Section 1127(c) provides that the proponent of a modified plan shall comply with the requirements of § 1125, which section requires a disclosure statement with adequate information. However, a disclosure statement is not necessary where the modifications to a plan are not material. *In re Downtown Inv. Club III*, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988); *see also In re Rhead*, 179 B.R. 169, 176 (Bankr. D. Ariz. 1995). The word "material" in this context has been defined as follows: "so affect[ing] a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would likely reconsider its acceptance." *In re Am. Solar King Corp.*, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988).

Under § 1127(d), acceptances and rejections of the plan before modification are deemed to have voted the same way with respect to the modified plan unless a holder of a claim changes its previous acceptance or rejection. Bankruptcy Rule 3019 implements § 1127(d) and provides as follows:

> If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor

FARHANG & MEDCOFF

or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who previously accepted the plan.

Fed. R. Bankr. P. 3019(a). Therefore, if there is no adverse change, there is also no need to resolicit votes in favor of the modified plan.

This modification is a non-adverse modification because the modification is immaterial. That is, the modification is unlikely to affect an accepting creditor in such a manner that the creditor would likely reconsider its vote.

### 1. The modification is non-adverse as to the Unclassified Class.

To accommodate the Debtor's highly technical objection to the Committee's plan, the Committee modifies the plan to remedy the Debtor's objection to clarify that the administrative creditors shall be designated as unclassified creditors. The treatment is not changed nor is it adverse to any creditor.

### 2. The modification is non-adverse as to Class 3.

The modification of UMB's claim is immaterial. When proposing the Plan, the Committee reasonably believed the Debtor would continue to make adequate protection payments, which would be applied to the outstanding principal balance, interest free. However, the Debtor, UMB, and the Committee entered into an agreement that values UMB's collateral as having nearly $300,000 in equity. As permitted by § 506, such an agreement entitled UMB to post-petition interest, fees, and costs. Instead of using adequate protection payments to pay down the principal balance interest free from the petition date, UMB's claim has grown significantly due to post-petition interest and attorneys' fees. Accordingly, it was necessary for UMB and the Committee to stipulate to plan treatment that would permit the Committee to capture the equity available in UMB's collateral for the benefit of all creditors. That said, UMB agreed to limit payments due under the Committee's liquidating plan to lease payments less amounts needed to pay for necessary insurance.

The modification still allows the unsecured creditors to share in the equity available in UMB's collateral once the lease terminates or once the Committee has liquidated UMB's collateral. The treatment is the same as previously contemplated, but now payments to UMB are capped at the amount collected under the lease related to UMB's collateral and the

Committee may continue to remit lease payments to the extent necessary to pay UMB's debt. Additionally, UMB has signed off on this non-adverse modification. UMB's signature hereto shall constitute an acceptance of the Committee's liquidating plan without the need to re-cast a ballot. The modification is a continuation of the Committee's liquidating plan's intent, to use lease payments to pay down or pay off the debt to capture as much equity as possible for unsecured creditors of this estate.

### 3. The modification to Class 9 is non-adverse.

The Committee's liquidating plan modifies the treatment of Class 9 creditors, the equity security holders, to make it clear that the Debtor's principals, the Vaughts, will receive any proceeds and/or property that is left after paying all creditors in full, which complies with the absolute priority rule.

### III. CONCLUSION

The Committee requests the Court find that the modification is a non-adverse modification and permit the Committee to proceed with the evidentiary hearing currently scheduled for November 26-27, 2018.

DATED this 25th day of September 2018.

> FARHANG & MEDCOFF
>
> By */s/ John C. Smith*
> John C. Smith
> *Attorney for Committee of Unsecured Creditors*

**APPROVED:**

SPENCER FANE

By */s/ Jacob Sparks (with permission)*
  Jacob Sparks
  *Attorneys for Creditor UMB*

# CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of September 2018, I electronically filed the foregoing with the Clerk of Court using the Court's electronic filing system, which will send notification of such filing to the following:

Renee Sandler Shamblin*
Office of the United States Trustee
230 North First Avenue, #204
Phoenix, AZ 85003-1706
Phone: (602) 682-2600
Fax: (602) 514-7270
Email: renee.s.shamblin@usdoj.gov

Kasey C. Nye*
Waterfall Economidis Caldwell Hanshaw & Villamana, P.C.
5210 E. Williams Circle, Suite 800
Tucson, AZ 85712
Phone: (520) 790-5828
Fax: (520) 745-1279
Email: knye@waterfallattorneys.com
*Attorneys for Debtor*

Brad Peters*
San Joaquin Bit Service, Inc.
P. O. Box 40186
Bakersfield, CA 93384
Email: bpeters@sanjoaquinbit.com

G. Lawrence Schubart*
Stubbs & Schubart, P.C.
340 N. Main Avenue
Tucson, AZ 85701
Phone: (520) 623-5466
Fax: (520) 882-3909
Email: lschubart@stubbsschubart.com

Daryl Bishop*
Steven Gilfenbain*
The Morgan Rose Ranch, LP
9777 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Email: dbishop@mmgagribusiness.com
Email: steven@mmgagribusiness.com

| | |
|---|---|
| 1 | Robert M. Charles, Jr.* |
| | Jeffrey L. Sklar* |
| 2 | Cindy K. Schmidt* |
| | Lewis Roca Rothgerber Christie LLP |
| 3 | One S. Church Ave., Suite 2000 |
| | Tucson, AZ 85701-1611 |
| 4 | Phone: (520) 622-2090 |
| | Fax: (520) 622-3088 |
| 5 | Email: rcharles@lrrc.com |
| | Email: jsklar@lrrc.com |
| 6 | Email: cschmidt@lrrc.com |
| 7 | |
| | Rebecca O'Brien* |
| 8 | Rusing, Lopez & Lizardi, PLLC |
| | 6363 N. Swan Rd., Suite 151 |
| 9 | Tucson, AZ 85718 |
| | Phone: (520) 748-4800 |
| 10 | Fax: (520) 529-4262 |
| | robrien@rllaz.com |
| 11 | *Attorneys for Douglas Dunlap* |
| 12 | |
| | William Novotny* |
| 13 | D. Samuel Coffman* |
| | Dickinson Wright PLLC |
| 14 | 1850 N. Central Ave., Suite 1400 |
| | Phoenix, AZ 85004 |
| 15 | Phone: (602) 285-5000 |
| 16 | Fax: (844) 670-6009 |
| | wnovotny@dickinsonwright.com |
| 17 | scoffman@dickinsonwright.com |
| 18 | *Attorneys for Industrial Commission of Arizona* |
| 19 | |
| | Nancy Swift* |
| 20 | Buchalter, a Professional Corporation |
| | 16435 N. Scottsdale Rd., Suite 440 |
| 21 | Scottsdale, AZ 85254-1754 |
| 22 | Phone: (480) 383-1800 |
| | Fax: (480) 824-9400 |
| 23 | nwsift@buchalter.com |
| | *Attorneys for Ford Motor Credit Corp.* |
| 24 | |
| 25 | Jacob Sparks* |
| | Spencer Fane |
| 26 | 10100 North Central Expressway, Suite 225 |
| | Dallas, TX 75231-4456 |
| 27 | Phone: 9214) 750-3610 |
| 28 | |

Fax: (214) 750-3612
JSparks@SpencerFane.com
*Attorneys for UMB*

Roberto C. Garcia*
Farhang & Medcoff, PLLC
4801 E. Broadway Blvd., Suite 311
Tucson, AZ 85711
Phone: (520) 790-5433
Facsimile: (52) 790-5736
Email: rgarcia@fmlaw.law
*Attorneys for Creditor Specialty Freight*

S. Cary Forrester*
Forrester & Worth, PLLC
3636 N. Central Avenue, Suite 700
Phoenix, AZ 8501
Email: SCF@forresterandworth.com
*Attorney for Reliant Well Drilling
and Pump Company, Inc. and Vaught
Equipment, LLC*

Howard A. Chorost*
Howard A. Chorost, P.C.
21 E. Speedway Blvd.
Tucson, Arizona 85705
Phone: (520) 792-0011
Fax: (520) 844-1196
Email: hchorost@me.com
*Attorney for Creditor Stubbs and Schubart*

Jill H. Perrella*
James G. Florentine*
Snell & Wilmer L.L.P.
One S. Church Ave., Suite 1500
Tucson, AZ 85701
Phone: (520) 882-1200
Fax: (520) 884-1294
Email: jperrella@swlaw.com
Email: jflorentine@swlaw.com
 *Attorneys for Creditor Flaska*

Robert L. Dawidiuk*
The Collins Law Firm P.C.

1770 Park Street, Suite 200
Naperville, IL 60563
Email: rdawidiuk@collinslaw.com

Julia Matter*
Pima County Attorney's Office
32 N. Stone, Suite 2100
Tucson, AZ 85701
Phone: (520) 724-8267
Fax: (520) 620-6556
Email: Julia.Matter@pcao.pima.gov
*Attorneys for Pima County Treasurer*

Roger Frazier*
Law Office of Roger W. Frazier
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 857165
Phone: (520) 882-4294
Fax: (520) 882-2853
roger@frazierlawaz.com
*Attorney for Joseph and Peggy Salvail*

All persons and entities on the Master Mailing
List on file with the Court


 *s/Liza D. Taylor*
Liza D. Taylor