Russell B. Stowers (SB#012903/PC#64802)
RUSSELL B. STOWERS, PLLC
Rillito Business Park
4574 North First Avenue, Suite 100
Tucson, AZ 85718
(520) 209-2777 (telephone)
(520) 882-3249 (facsimile)
Russ@StowersWest.com
*Counsel for Creditors Christina and Doug Dunlap
and High Desert Irrigation*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | In Proceedings Under Chapter 11 |
|---|---|
| FAR WEST PUMP COMPANY, | Case No. 4:17-bk-11112-BMW Chapter: 11 |
| Debtor. | **DUNLAP OBJECTIONS TO LEONARD AND TALWAR APPLICATIONS TO SUE SECURA INSURANCE** |

Creditors Doug and Tina Dunlap and High Desert Irrigation (collectively, the "Dunlaps") object to the applications by attorney/creditor David Leonard and attorney Rohit Talwar (Docs. 748-753) for retention to file a bad faith lawsuit against Debtor's insurer, Secura Insurance Company ("Secura"). While a bad faith suit seems ill-advised for a number of reasons, Debtor should at least get a second opinion from independent counsel who were

not involved in the insurance claims in question, cannot be called as witnesses in a bad faith case, and who are not themselves creditors in bankruptcy. For these and other reasons below, the Dunlaps respectfully object to the retention of Messrs. Leonard and Talwar for the purpose of filing a bad faith suit against Secura, without prejudice to Debtor getting a second opinion from other counsel and filing a new retention request if appropriate at a later date.

1. Debtor Far West Pump Company is the named insured on various commercial insurance coverages issued by Secura. Exhibit 1 (Secura policy excerpts) at pages 1-2.

2. In November 2014, Debtor retained attorney David Leonard to pursue insurance claims arising from the misconduct of former Far West Vice President Joel Rodriguez while he was employed by Debtor. Exhibit 2 (Leonard engagement letter).

3. In January 2015, Mr. Leonard filed suit against Rodriguez and advised Secura of same. Exhibit 3 (Leonard memo to Secura). Mr. Leonard promised to hold any recoveries in trust for Secura, apply same as appropriate and add Secura as a party to the lawsuit if necessary to protect its subrogation rights. *Id.*

4. Mr. Talwar was subsequently retained as counsel of record for Far West in the Rodriguez case and helped Far West pursue its remaining insurance claims against Secura.

5. Secura paid some but not all of Debtor's insurance claims. The unpaid claims, presently valued by Debtor at approximately $137,000, are the subject of the proposed suit. Debtor would also seek its attorneys' fees and costs in such a suit, and possibly punitive damages as well, though such damages are difficult to recover under Arizona law.

6. The Secura policy documents include a two-year time limit for an insured to sue Secura, the same as the Arizona statute of limitations for bad faith claims. *See* Exhibit 1 (Secura policy excerpts) at pages 3-5 and A.R.S. § 12-542. Under the Secura policy, the time limit is triggered by the date on which the loss occurred or the date the insured discovers the loss, depending on the specific coverage in question. Exhibit 1 at pages 3 and 5.

7. As noted above, Debtor's insurance claims date back to 2014, and Debtor filed the Rodriguez suit in early 2015. By then, Far West had already recovered approximately $725,000 in criminal restitution from Mr. Rodriguez, leaving an unpaid balance of about $125,000, as Mr. Leonard advised Secura in 2015. Exhibit 3.

8. The Debtor and Mr. Leonard went back and forth with Secura on the remaining losses and insurance claims thereafter. By late 2017/early 2018, Far West owners Clark and Channa Vaught were bitterly complaining to Secura about not having all of their claims paid. "WE ARE NOT HAPPY!!! . . .WHERE IS THE MONEY!!!!!!", Channa Vaught wrote to Secura in early 2018. Exhibit 4 (caps in original). At or around the same time, Clark Vaught told Secura that Far West would file a bad faith suit if Secura did not pay all remaining claims within 24 hours. Exhibit 5.

9. Given the age of the underlying losses, Debtor's insurance claims and the Vaughts' threats to sue Secura, a bad faith suit would likely be met with a motion to dismiss on timeliness/statute of limitations grounds. To survive such a motion, Debtor would have to show that the time limit/statute of limitations was tolled for some reason recognized by the

policy documents and/or applicable law. They would also need admissible evidence to support a tolling argument, and the Vaughts would be subject to attack on credibility and other grounds if they testify. The only other friendly witnesses for Debtor appear to be the lawyers who handled their insurance claims.

10. Mr. Leonard was the lawyer responsible for claims-related communications with Secura from inception until his withdrawal just before bankruptcy, with Mr. Talwar taking over thereafter. If Debtor tries to use the Leonard/Talwar communications to argue that the time limit/statute of limitations was tolled (*e.g.*, that they reasonably believed Secura was still considering their unpaid claims years later), that risks making the lawyers witnesses. That would also be true if the Vaughts assert advice-of-counsel in trying to explain why they did not pursue the bad faith suit they threatened years ago, and this assertion could also result in the waiver of the attorney-client privilege between Debtor and Leonard/Talwar. Regardless of the ultimate outcome on these issues, their mere presence could impair the pursuit of any suit by these lawyers on Debtor's behalf.

11. Mr. Leonard is himself a bankruptcy creditor, having asserted a claim for more than $400,000 in pre-petition fees against Far West, and he says he has a bad faith claim of his own against Secura due to Debtor's assignment of policy proceeds to him in lieu of payment for the same fees. *See* Doc. 751 at ¶ 7. Neither Debtor nor its attorneys explain how they propose to resolve this conflict, whether Mr. Leonard intends to sue Secura himself, or how they would apportion any additional recovery between them.

4

12. Most insurers do not take kindly to being sued for bad faith and defend these cases vigorously. A bad faith suit could cause Secura to take a fresh look at the insurance claims made by Debtor and its recoveries from other sources to determine whether Debtor kept its promise to hold any recoveries in trust and apply them to covered losses, and whether Secura overpaid on these claims as a result. The odds Secura would pay any insurance claims that remain open would also drop to near-zero once they got sued for bad faith.

13. Secura would also be entitled to seek its attorneys' fees and costs in defending such a suit, exposing the estate to a substantial fee/cost award, particularly given Debtor's track record of contentious litigation tactics, serial continuances and constant delays. Given this history and the case management problems caused by COVID-19, it is unlikely that a newly-filed bad faith case would result in a trial date before 2022. In the meantime, Debtor would also be responsible for paying its own court costs and litigation expenses on an ongoing basis; *e.g.*, filing fees, expert witness fees, deposition charges and other out-of-pocket costs.

14. Even if a bad faith suit resulted in a net recovery, it is not entirely clear how it would be shared with the attorneys. Debtor reached a settlement with Mr. Leonard to give him a 50-50 split of additional insurance proceeds up to $200,000 against his prior fee claim. Doc. 487. Debtor's papers say the proposed "contingency fee only applies to the recovery for the Debtor and not to the insurance proceeds assigned to Mr. Leonard." Doc. 751 at ¶ 8. Yet Debtor intends to sue for the same insurance monies as part of a "bad faith breach of contract" action, including pursuit of "policy contract claims against Secura." *Id.* at ¶ 5.

15. Debtor and counsel propose that Messrs. Leonard and Talwar collectively be paid a 40-50% contingent fee for the bad faith suit. *See* Doc. 751 at ¶ 8. Since they already billed and collected in some form for their work in pursuing the subject insurance claims, however, how is an additional 40-50% contingent fee for a suit by the same lawyers based on the same claims reasonable? Respectfully, it is not.

16. To our knowledge, Debtor never listed a bad faith suit against Secura as a potential asset until the recent Leonard/Talwar applications. Now they ask the Court and creditors to hurry to approve their retention so they can file suit immediately -- even though they apparently believe a final letter from Secura one year ago triggers the two-year time limit for a bad faith suit. *See* Doc. 751 at ¶ 5(a). If they are right, then Debtor still has another year to sue for bad faith and arguably longer for breach of contract under the six-year statute of limitations. A.R.S. § 12-548. If they are wrong, and any suit is already time-barred, there is no harm in taking a little more time to study all of this carefully.

17. Rather than racing to allow Debtor to file yet another lawsuit, we respectfully suggest that Debtor secure a second opinion from independent counsel who do not face the same issues as Messrs. Leonard and Talwar. For example, Debtor used the Schmidt, Sethi firm in an unrelated insurance bad faith case that recently settled on favorable terms. This or any similar firm can be trusted to assess the merits, risks and benefits of a suit against Secura, propose a reasonable contingent fee and estimate the expenses the estate would incur.

## Conclusion

This bankruptcy has been pending since September 2017, and Debtor will be liquidated barring a reversal on its BAP appeal, which awaits oral argument on July 15, 2020. In the meantime, we respectfully submit there is not a sufficient basis on this record to find a bad faith suit by Messrs. Leonard and Talwar is in the best interests of the estate at this time. Accordingly, the Dunlaps request that the pending applications for their retention (Docs. 748-753) be denied, without prejudice to Debtor's ability to secure a second opinion from independent counsel and file a new retention request if one is warranted at a later date.

DATED this 23rd day of June, 2020.

> RUSSELL B. STOWERS, PLLC
>
> By: /s/ Russell B. Stowers
> Russell B. Stowers
> Rillito Business Park
> 4574 North First Avenue, Suite 100
> Tucson, AZ 85718
> Counsel for the Dunlaps and
> High Desert Irrigation

# CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System and additionally e-mailed copies of the attached document to the following ECF registrants:

Renee Sandler Shamblin
Office of the United States Trustee
230 North First Avenue, #204
Phoenix, AZ 85003-1706
Email: renee.s.shamblin@usdoj.gov

Kasey C. Nye
Waterfall Economidis
5210 E. Williams Circle, Suite 800
Tucson, AZ 85712
Email: knye@waterfallattorneys.com
*Attorneys for Debtor*

Rohit Talwar
Talwar Law PLLC
1790 E. River Road, Ste. 300
Tucson, AZ 85718
(520) 260-2007
rohit@talwarlaw.com
*Attorney for Farwest and the Vaughts*

John C. Smith
Smith Law Offices, PLLC
6720 East Camino Principal, Suite 203
Tucson, Arizona 85715
*Attorneys for Unsecured Creditors Committee*

Rebecca O'Brien
Rusing, Lopez & Lizardi, PLLC
6363 N. Swan Rd., Suite 151
Tucson, AZ 85718
Email: robrien@rllaz.com
*Attorneys for the Dunlaps and High Desert Irrigation*

Brad Peters
San Joaquin Bit Service, Inc.
P. O. Box 40186
Bakersfield, CA 93384
Email: bpeters@sanjoaquinbit.com

G. Lawrence Schubart
Stubbs & Schubart, P.C.
340 N. Main Avenue
Tucson, AZ 85701
Email: lschubart@stubbsschubart.com

Daryl Bishop
Steven Gilfenbain
The Morgan Rose Ranch, LP
9777 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
Email: dbishop@mmgagribusiness.com
Email: steven@mmgagribusiness.com

Robert M. Charles, Jr.
Jeffrey L. Sklar
Lewis Roca Rothgerber Christie LLP
One S. Church Ave., Suite 2000
Tucson, AZ 85701-1611
Email: rcharles@lrrc.com
Email: jsklar@lrrc.com

Nancy Swift
Buchalter, a Professional Corporation
16435 N. Scottsdale Rd., Suite 440
Scottsdale, AZ 85254-1754
Email: nswift@buchalter.com
*Attorneys for Ford Motor Credit Corp.*

Jacob Sparks
10100 North Central Expressway, #225
Dallas, TX 75231-4456
Email: JSparks@SpencerFane.com
*Attorneys for UMB*

S. Cary Forrester
Forrester & Worth, PLLC
3636 N. Central Avenue, Suite 700
Phoenix, AZ 8501
Email: SCF@forresterandworth.com
*Attorney for Reliant Well and Vaught Equipment*

Howard A. Chorost
21 E. Speedway Blvd.
Tucson, Arizona 85705
Email: hchorost@me.com
*Attorney for Creditor Stubbs and Schubart*

Roger Frazier
2525 E. Broadway Blvd., Suite 200
Tucson, AZ 857165
roger@frazierlawaz.com
*Attorney for Joseph and Peggy Salvail*

Jill H. Perrella
James G. Florentine
Snell & Wilmer L.L.P.
One S. Church Ave., Suite 1500
Tucson, AZ 85701
Email: jperrella@swlaw.com
Email: jflorentine@swlaw.com
*Attorneys for Creditor Flaska*

Robert L. Dawidiuk
The Collins Law Firm P.C.
1770 Park Street, Suite 200
Naperville, IL 60563
Email: rdawidiuk@collinslaw.com

10

1 Lesley Lukach
Pima County Attorney's Office
2 32 N. Stone, Suite 2100
Tucson, AZ 85701
3 Email: Lesley.Lukach@pcao.pima.gov
4 *Attorneys for Pima County Treasurer*

5 Larry Folks
Folks Hess Kass PLLC
6 1850 N. Central Ave., Suite 1140
7 Phoenix, AZ 85004
Email: folks@folkshesskass.com
8 *Attorneys for Nationstar Mortgage*

9

10 By: */s/ Russell B. Stowers*