UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| In re:<br><br>FARWEST PUMP COMPANY,<br><br>Debtor. | Chapter 7<br><br>Case No. 4:17-bk-11112-BMW<br><br>**ORDER APPROVING TRUSTEE'S MOTION TO APPROVE COMPROMISE AND SETTLEMENT WITH THE VAUGHTS AND VAUGHT AFFILIATES** |
|---|---|

Having reviewed the *Trustee's Motion to Approve Compromise and Settlement with the Vaughts and Vaught Affiliates* [Doc 960] ("**Motion**")[1] seeking an order approving the *Settlement Agreement* ("**Settlement**") among Farwest Pump Company ("**Farwest**"), on one hand, and Clark P. Vaught, Channa R. Crews-Vaught, the Clark P. Vaught Revocable Trust dated September 7, 1993 (the "**Trust**" and, collectively with Mr. and Mrs. Vaught, the "**Vaughts**"), Vaught Equipment, LLC ("**VE**"), Reliant Well Drilling and Pump Company, Inc. ("**Reliant**"), and Farco Perforaciones Y Bombeo, SA. de C.V. ("**Farco**") (the Vaughts, VE, Reliant, and Farco are referred collectively as "**Adversary Defendants**"), as well as the *Declaration of Chris Linscott, Chapter 7 Trustee, in Support of Trustee's Motion to Approve Compromise*

---

[1] Unless otherwise defined in this order, capitalized terms retain the definition given to them in the Motion.

*and Settlement with the Vaughts and Vaught Affiliates* attached to the Motion, the *Response of ANC Orchard, LLC; BMR III, L.P.; and the Morgan Rose Range, L.P. to Trustee's Motion to Approve Compromise and Settlement With the Vaughts and Vaught Affiliates* ("**Objection**") [Doc 963]; the *Joinder in Response of ANC Orchard, LLC; BMR III, L.P.; and the Morgan Rose Ranch, L.P. to Trustee's Motion to Approve Compromise and Settlement with the Vaughts and Vaught Affiliates* ("**Joinder**") [Doc 964]; the *Trustee's Reply in Support of Motion to Approve Compromise and Settlement with the Vaughts and Vaught Affiliates* ("**Reply**") [Doc 966], the *Declaration of Christopher Linscott in Support of Trustee's Reply in Support of Motion to Approve Compromise and Settlement with the Vaughts and Vaught Affiliates* attached to the Reply, the *Stipulation and Joint Request to Vacate Hearing on Trustee's Motion to Approve Compromise and Settlement with the Vaughts and Vaught Affiliates* ("**Stipulation**") [Doc 971], and the entire record in this bankruptcy case, and good cause appearing:

**THE COURT FINDS AND CONCLUDES** that:

A. The parties negotiated the Settlement at arm's length and in good faith.

B. In reviewing the Settlement, the Court finds and concludes that the Settlement is fair and equitable, and serves the best interests of the Debtor's estate and its creditors.

C. Creditors and parties-in-interest received due and adequate notice of the Motion.

D. The Objection and Reply have been withdrawn as set forth in the Stipulation.

**And IT IS ORDERED** that:

1. The Motion is granted, and the compromise and settlement between the Trustee and the Vaughts and Vaught Affiliates, as attached to the Motion, and attached here as **Exhibit A**, is approved.

2. This Court retains jurisdiction to adjudicate any disputes regarding and/or enforce the terms of this Order and the settlement.

**DATED AND SIGNED ABOVE**

# Exhibit A

# SETTLEMENT AGREEMENT

This Settlement Agreement (this "**Agreement**") is entered into as of this 25th day of July, 2022, by and among Christopher Linscott, in his capacity as Chapter 7 Trustee for the bankruptcy estate of Farwest Pump Company (the "**Trustee**"), on the one hand, and Clark P. Vaught ("**Mr. Vaught**"), Channa R. Crews-Vaught ("**Mrs. Vaught**"), the Clark P. Vaught Revocable Trust dated September 7, 1993 (the "**Trust**" and, collectively with Mr. and Mrs. Vaught, the "**Vaughts**"), Vaught Equipment, LLC, an Arizona limited liability company ("**VE**"), Reliant Well Drilling and Pump Company, Inc., an Arizona corporation ("**Reliant**"), and Farco Perforaciones Y Bombeo, S.A. de C.V., a Mexican corporation ("**Farco**"), on the other. The Vaughts, VE, Reliant, and Farco are sometimes referred to collectively as the "**Defendants**").

**RECITALS**

A) On September 20, 2017, Farwest Pump Company, an Arizona corporation (the "**Debtor**"), filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, Case No. 4:17-11112-BMW (the "**Bankruptcy Case**").

B) On September 11, 2020, the Official Committee of Unsecured Creditors (the "**Committee**") filed suit against the Defendants and the Debtor in the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**"), Adversary No. 4:20-ap-00266-BMW (the "**First Adversary Proceeding**"). The Committee asserted claims for the avoidance and recovery of alleged fraudulent transfers.

C) On November 4, 2020, the Bankruptcy Case was converted to a proceeding under Chapter 7 of the Bankruptcy Code and, on December 8, 2020, the Trustee was elected as Chapter 7 Trustee.

D) On August 2, 2021, the Trustee was substituted for the Committee as the plaintiff in the First Adversary Proceeding.

E) On February 23, 2022, the Trustee filed a second adversary proceeding against the Vaughts, VE, and Farco, Adversary No. 4:22-ap-00035-BMW (the "**Second Adversary Proceeding**" and, collectively with the First Adversary Proceeding, the "**Adversary Proceedings**"). In the Second Adversary Proceeding, the Trustee asserted claims for breach of contract, conversion, unjust enrichment, turnover of estate property, and the disallowance of filed claims. The summons and complaints in the Adversary Proceedings have not yet been served and no answers or other responses have been filed.

F) One of the claims asserted in the Second Adversary Proceeding related to the alleged improper transfer and loss of a 2015 Kenworth Chassis and Foremost Model DR12/26P-80/24H-900 Dual Rotary Drill Rig (collectively the "**Drill Rig**"), which was

owned by the Debtor and leased to VE which, in turn, subleased it to Farco. Farco informed the Trustee that the Drill Rig was stolen from a job cite in Sonora, Mexico, on May 25, 2020. Farco has provided the trustee with a copy of the related police report.

G) The Drill Rig was insured through a policy issued by Grupo Nacional Provincial ("**GNP**"). On May 27, 2020, an insurance claim, No. 104378112 (process no. SD00009109) was submitted to GNP for the theft of the Drill Rig and certain other property owned or leased by Farco, which was stolen at the same time, and for the resulting economic losses suffered by Farco. The claim was denied.

H) On or about May 5, 2021, Farco and Minera Hartlepool, Sociedad de Responsabilidad Limitada de Capital Variable ("**Minera**"), a Mexican corporation, which holds the first position lien against the Drill Rig, entered into an *Assignment of Rights Agreement* pursuant to which, among other things, Farco authorized Minera to file suit against GNP for wrongfully failing to honor the contract of insurance on the Drill Rig. The *Assignment of Rights Agreement* provided, among other things, that any excess proceeds remaining after the satisfaction of the secured indebtedness owing to Minera would be returned to Farwest, that Minera would account to Farwest for all its collection expenses, and that any notice to Farwest would be delivered to the Trustee, who is named as a third-party beneficiary.

I) On or about May 5, 2021, Farco and Minera entered into an Addendum to the *Assignment of Rights Agreement* which, among other things, clarified that the amounts to be paid to Farwest would be net of the deductible, the reasonable costs and fees associated with the lawsuit (subject to notice and an opportunity to object), and the amounts owing to Minera on its secured loan ("**Farwest's Net Proceeds**").

J) On or about November 10, 2021, Minera and Farco filed suit against GNP and Prevex Agente de Seguros y de Fianzas, S.A. de C.V., a Mexican corporation ("**Prevex**") in Sonora, Mexico (the "**Mexican Lawsuit**"). Prevex is or was Farco's bond and insurance agent. Minera sued to recover for the theft of the Drill Rig and Farco sued to recover for the theft of other property and for the economic damages it suffered as a result of the thefts. GNP and Prevex contend the theft and economic damages asserted by Farco is not covered under the insurance policy. The Mexican Lawsuit remains pending.

K) The Trustee disputes the allowance of all claims against the estate asserted by the Defendants, including but not limited to: P.O.C. No. 34 asserted by the Vaughts, P.O.C. No. 35 asserted by VE, the prepetition claim in the amount of $17,127.45 which the Vaughts acquired from Stubbs & Shubart, the prepetition claim in the amount of $70,200 asserted by VE for pre-petition equipment rentals, and any claims related to storing equipment or reimbursement of expenses related to equipment.

L) As a result of lengthy negotiations, the parties now wish to fully and finally resolve their differences in regard to the claims asserted in the Adversary Proceedings, and all other claims they may have against each other.

## COVENANTS AND REPRESENTATIONS

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1) This Agreement will become effective (the "**Effective Date**") when it has been: (a) executed by all parties; (b) approved by the Bankruptcy Court by an order entered after notice and an opportunity for a hearing pursuant to Bankruptcy Rule 9019, provided that such order has not been stayed, and provided that the time to appeal or otherwise seek review has expired with no appeal, motion for relief from the order, or petition for review having been filed or, if filed, having been favorably resolved; and (c) Trustee has received the payment in full of the Initial Cash Payment. Promptly upon execution of this Agreement, the Trustee will file a motion to obtain Bankruptcy Court approval of this Agreement pursuant to Bankruptcy Rule 9019, and will diligently and in good faith prosecute the motion to completion.

2) Defendants will provide consideration to the estate in the form of cash payments, waivers of filed claims, shared proceeds from the Mexican litigation, work to be performed on estate property, and broad releases of the Trustee and the Estate, as follows:

a) Within 30 days after the Effective Date, the Defendants will pay the Trustee the sum of $300,000.00 (the "**Initial Cash Payment**") in the form of a cashier's check made payable to the Trustee.

b) Within 90 days after the Effective Date, the Defendants will pay the Trustee an additional $85,000.00 (the "**Additional Cash Payment**") in the form of a cashier's check made payable to the Trustee.

c) Without limiting the generality of the waivers and releases set forth in subparagraph g, below, upon the Effective Date the Defendants waive all claims against the Trustee and the bankruptcy estate, including but not limited to:

   i. Mr. and Mrs. Vaught waive and release their Chapter 11 Administrative Priority Claim, P.O.C. No. 34, in the amount of $46,624.63;

   ii. VE waives and releases its Chapter 7 Administrative Priority Claim, P.O.C. No. 35, in the amount of $10,858.63.

   iii. The Vaughts waive and release their prepetition claim in the amount of $17,127.45 which they acquired from Stubbs & Shubart PC [DE 672].

iv. VE waives and releases its prepetition claim in the amount of $70,200 for pre-petition equipment rentals.

v. Any claims for storing Debtor's equipment or reimbursement of expenses incurred related to Debtor's equipment.

d) The Defendants agree that Farwest's Net Proceeds from the Mexican Lawsuit must be promptly paid to the Trustee. The Defendants agree to promptly provide the Trustee with copies of all rulings, judgements, orders, or settlements filed in the Mexican Lawsuit, and agree to provide the Trustee with written updates concerning the status of the Mexican Lawsuit upon request from the Trustee.

e) Farco further agrees that, should it receive or be entitled to receive any proceeds (net of fees and expenses of Mexican litigation counsel) from the Mexican Lawsuit other than on account of Drill Rig (including any proceeds on account of the theft of property other than the Drill Rig, or on account of the economic damages that Farco suffered as a result of the theft of the Drill Rig or other property), Farco will promptly pay twenty five percent (25%) of such proceeds to the Trustee.

f) VE and Reliant agree to timely perform such well drilling, well repair, brush clearing, and grading work on the property owned by the bankruptcy estate in Wilcox, Arizona in accordance with the work order attached to this Agreement as Exhibit "A." VE and Reliant will charge for such work at their usual and customary rates, but will give the Trustee a credit in the amount of $50,000.00 to be applied against such charges. In the event that it is determined that the well on the subject real property does not have water then, as specified in Exhibit "A", the net remaining credit (estimated at $24,800) will remain available until December 31, 2023 and will be transferable to the buyer of the subject real property. The actual amount of the credit will be determined by subtracting from the starting credit of $50,000 the cost of the work actually performed.

g) On the Effective Date, and except with respect to the Trustee's obligations under this Agreement, the Defendants, on their own and on behalf of any of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and affiliates, forever waive, discharge, and release the Trustee, the bankruptcy estate, and their respective successors, predecessors, insurers, agents, attorneys, and representatives (collectively, the "**Trustee Released Parties**") from any and all claims, actions, causes of action, defenses, setoffs, recoupments, controversies, or liability of any kind, whether in law or in equity, whether known or unknown, foreseen or unforeseen, accrued or unaccrued, that any

of them has ever had, now has, or may ever have, that arise from or relate to any acts, omissions, or events that occurred on or before the Effective Date.

3) The Trustee and the bankruptcy estate will provide consideration in the form of the following waivers and releases: On the Effective Date, and except with respect to the Defendants' obligations under this Agreement, the Trustee and the bankruptcy estate forever waive, discharge, and release the Defendants and their respective agents, attorneys, heirs, successors, and representatives (collectively, the "**Defendant Released Parties**") from any and all claims, actions, causes of action, defenses, setoffs, recoupments, controversies, or liability of any kind, whether in law or in equity, whether known or unknown, foreseen or unforeseen, accrued or unaccrued, that the Trustee or the bankruptcy estate has ever had, now has, or may ever have, that arise from or relate to any acts, omissions, or events that occurred on or before the Effective Date.

4) The parties acknowledge that the waivers and releases set forth in Paragraphs 2(g) and 3, above, extend to unknown as well as known claims and waive the application of any provision of law that purports to limit the scope of a general release, as applicable.

5) Promptly following the Effective Date, the parties will file stipulations to dismiss the Adversary Proceedings with prejudice, with each party to bear its own costs and fees incurred in regard thereto, and will take all other actions reasonably necessary to obtain the entry of orders of dismissal with prejudice.

6) This Agreement shall not be construed as an admission of wrongdoing, liability, or fault on the part of the Defendants, or any of them, the same being expressly denied. This Agreement shall not be construed as an admission of, or concession of, the allowability of any claim asserted against the Debtor's bankruptcy estate. This Agreement is entered into solely for the purpose of settling disputed and unliquidated claims.

7) All notices or other communications required or provided to be sent by any party shall be in writing and shall be deemed to have been given and received upon actual receipt if by personal delivery, overnight delivery service, email, or facsimile transmission, or 72 hours after deposit in the United States mail, registered or certified, return receipt requested, postage prepaid, addressed to the party at the address set forth below or at such other address(es) as the parties may from time to time specify in writing delivered in a like manner.

<u>To Defendants</u>:
c/o Channa Crews-Vaught
Vaught Equipment, LLC
3230 W. Camino Del Cerro
Tucson, Arizona 85745
channa@vaughtequipment.com

<u>With copies to</u>:
S. Cary Forrester
Forrester & Worth, PLLC
2800 North Central Ave., Suite 1200
Phoenix, Arizona, 85004
scf@forresterandworth.com


Steven N. Berger
Engelman Berger, PC
2800 North Central Ave., Suite 1200
Phoenix, Arizona, 85004
snb@eblawyers.com


<u>To Trustee</u>:
Christopher G. Linscott
Keegan Linscott & Associates, PC
3443 N. Campbell Avenue, Suite 115
Tucson, Arizona 85719-2328
clinscott@keeganlinscott.com

<u>With a copy to</u>:
Bradley Cosman
Perkins Coie LLP
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012-2788
BCosman@perkinscoie.com


8) This Agreement will be governed by and construed in accordance with the laws of the State of Arizona except to the extent preempted by the laws of the United States of America. The parties agree that the Bankruptcy Court will have exclusive jurisdiction to hear and determine any dispute arising out of, or related to, this Agreement, and all parties consent to jurisdiction and venue before the Bankruptcy Court for such purpose. If there is any dispute between the parties to enforce or interpret any provision of this Agreement or rights arising under this Agreement, the losing party in such dispute will pay to the prevailing party, as determined by the Bankruptcy Court, any fees and costs incurred in connection with such controversy, claim, or dispute.

9) This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns, heirs, executors, and administrators.

10) Each party, promptly upon the request of another, will execute and have acknowledged and delivered to the other any and all further documents and instruments reasonably requested or appropriate to evidence or give effect to the provisions of this Agreement, provided that such documents and instruments are consistent with the provisions hereof.

11) In the event that any provision of this Agreement conflicts with applicable law, such conflict will not affect any other provision of this Agreement which can be given effect without the conflicting provision and, to that end, the provisions of this Agreement and any document or instrument executed contemporaneously herewith are declared to be severable.

12) This Agreement may be executed in counterparts, each of which will be deemed an original, and all of which together will constitute one and the same document. Signatures delivered by facsimile, email, or other electronic means will be binding.

13) Each individual executing this Agreement on behalf of any entity hereby represents and warrants that he or she is fully authorized to do so and that this Agreement, when so executed and approved by the Bankruptcy Court, will be fully binding upon such entity.

14) This Agreement constitutes the full and complete understanding of the parties with regard to the subject matter hereof, and supersedes any prior or contemporaneous agreements and understandings, whether oral or in writing. This Agreement may not be amended, modified, or changed, nor will any waiver of any provision hereof be effective, unless evidenced by an instrument in writing, signed by the party against whom enforcement is sought.

15) Time is of the essence in the performance of each obligation under this Agreement. If the time for the performance of any obligation under this Agreement expires on a Saturday, Sunday, or legal holiday, the time for performance will be extended to the immediately succeeding day which is not a Saturday, Sunday or legal holiday.

16) Each of the parties has read and understands this Agreement and is executing it voluntarily and without duress, after consultation with legal counsel or, alternatively, after full and complete opportunity to consult with counsel.

–Signature Page Follows--

By _____
Christopher G. Linscott, in his capacity as
Chapter 7 Trustee for the bankruptcy estate
of Farwest Pump Company


By _____
Clark P. Vaught, on behalf of himself and as
trustee of the Clark P. Vaught Revocable
Trust dated September 7, 1993


By *Channa R Crews-Vaught*
   Channa R Crews-Vaught (Aug 2, 2022 14:02 EDT)
Channa R. Crews-Vaught


VAUGHT EQUIPMENT, LLC, an Arizona
limited liability company


By *Channa R Crews-Vaught*
   Channa R Crews-Vaught (Aug 2, 2022 14:02 EDT)
Channa Crews-Vaught, Member and
Authorized Agent


RELIANT WELL DRILLING AND PUMP
COMPANY, INC., an Arizona corporation


By _____
Clark P. Vaught, President and Chief
Executive Officer


FARCO PERFORACIONES Y BOMBEO,
S.A. DE C.V., a Mexican corporation


By _____
Clark P. Vaught, Authorized Agent


8

By /s/ Christopher G. Linscott
Christopher G. Linscott, in his capacity as
Chapter 7 Trustee for the bankruptcy estate
of Farwest Pump Company

By _____
Clark P. Vaught, on behalf of himself and as
trustee of the Clark P. Vaught Revocable
Trust dated September 7, 1993

By _____
Channa R. Crews-Vaught

VAUGHT EQUIPMENT, LLC, an Arizona
limited liability company

By _____
Channa Crews-Vaught, Member and
Authorized Agent

RELIANT WELL DRILLING AND PUMP
COMPANY, INC., an Arizona corporation

By _____
Clark P. Vaught, President and Chief
Executive Officer

FARCO PERFORACIONES Y BOMBEO,
S.A. DE C.V., a Mexican corporation

By _____
Clark P. Vaught, Authorized Agent

By _____
　Christopher G. Linscott, in his capacity as
　Chapter 7 Trustee for the bankruptcy estate
　of Farwest Pump Company

By /s/ Clark P. Vaught
　Clark P. Vaught, on behalf of himself and as
　trustee of the Clark P. Vaught Revocable
　Trust dated September 7, 1993


By _____
　Channa R. Crews-Vaught


VAUGHT EQUIPMENT, LLC, an Arizona
limited liability company


By _____
　Channa Crews-Vaught, Member and
　Authorized Agent


RELIANT WELL DRILLING AND PUMP
COMPANY, INC., an Arizona corporation

By /s/ Clark P. Vaught, Pres-CEO
　Clark P. Vaught, President and Chief
　Executive Officer


FARCO PERFORACIONES Y BOMBEO,
S.A. DE C.V., a Mexican corporation

By /s/ Clark P. Vaught
　Clark P. Vaught, Authorized Agent

8



To:  Christopher Linscott, Trustee

Re:  Work on Wilcox Property ($50K Credit towards well work)

1. Access Roads/clearing – including the road that goes along the upper portion of the property - **$5,500**
2. Take a control box and Generator to the Well Site and run the existing well pump to see if it is operable - **$1,200. IF WELL PUMP IS NOT IN THE WELL see #4**
3. Obtain a determination of the depth of the well, whether the well has an adequate water supply and the obtain a static water level - **$7,500**
4. If the well pump is bad, cost to repair/replace the well pump - **$11,000**
5. If the well does not have water, we would need a formal estimate for the cost to either drill the well deeper or drill a new well – **APPROXIMATE $65,000 for a 1,000 ft, 4 ½" PVC Cased Well (this is approximate because materials are in short supply and prices are fluctuating—pricing will be determined when formal estimate/work order is requested)**
6. If the well does not have water, the net remaining credit of $24,800* will remain available until December 31, 2023, and will be transferable to the buyer of the subject real property

* $24,800 is an estimate. The actual amount of the credit will be determined by subtracting from the starting credit of $50,000 the cost of the work actually performed, as detailed in items 1-4 above. The parties intend that the work specified in items 1-3 will be performed but item 4 may not be, at the election of Mr. Linscott.

**Exhibit "A"**